ORIGINAL



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/16/25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TANYA TAYLOR,

                Plaintiff,

        - against -

THE LONG TERM DISABILITY INCOME PLAN
FOR EMPLOYEES OF THE FEDERAL RESERVE
SYSTEM, AND MATRIX ABSENCE
MANAGEMENT, INC.,

                Defendants.

---

25 Civ. 01134 (LLS)

OPINION & ORDER

Defendants The Long Term Disability Income Plan for Employees of the Federal Reserve System and Matrix Absence Management, Inc. denied plaintiff Tanya Taylor's claim for long term disability benefits. Taylor appealed the denial to this Court, and defendants moved to limit discovery to an administrative record created for Taylor's claim. For the following reasons, defendants' motion is granted.

## Background

The following facts are taken from Taylor's Complaint (Dkt. No. 1) and presumed true for the purposes of this motion.

Plaintiff Tanya Taylor filed a claim for disability benefits under a long term disability plan (the "Plan") sponsored by her employer, the Federal Reserve System ("Federal Reserve"), and administered by Matrix Absence Management, Inc. ("Matrix"). Compl. ¶¶ 6-8, 14. The Plan provides disability

insurance payments to Federal Reserve employees who are unable to work in any occupation due to illness or injury. Id. ¶ 11. Matrix initially denied Taylor's claim, then temporarily reversed its decision, and later denied her claim again. Def. Br. at 5-7 (Dkt. No. 30). After exhausting the Plan's administrative appeals process, Taylor sued Matrix and the Plan for breach of contract pursuant to 29 U.S.C. § 1132(A)(1)(B). See Compl. ¶¶ 19-24.

Taylor's benefits claim and subsequent appeals generated a 2,622-page administrative record, which includes her medical records, clinical information, and communications between Taylor, her counsel, and Matrix. Def. Br. at 2, fn. 1. Matrix relied on this record when evaluating Taylor's claim. Id. at 2. The parties now dispute whether Taylor is entitled to additional discovery on her breach of contract suit before this Court, or if she must present her argument based solely on the evidence contained in the administrative record.

### Legal Standard

The parties agree the Employee Retirement Income Security Act of 1974 ("ERISA") does not govern the Plan because it is a "governmental plan." See 29 U.S.C. § 1003(b)(1); 12 U.S.C. § 391. When ERISA does not apply, courts turn to basic principles of state contract law to analyze a benefits plan. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 112-13 (1989). New

- 2 -

York's contract law governs Taylor's claim because the Plan contains a New York choice of law provision. <u>See</u> Def. Answer, ex. A (Dkt. No. 12) (exhibit containing the Plan, which includes choice of law language in Section 13.11).

"Under New York law, an employer's decision regarding non-ERISA benefits may be set aside only where it is made in bad faith, was arbitrary or was the result of fraud." <u>Welland v. Citigroup, Inc.</u>, 2003 WL 22973574, at *11 (S.D.N.Y. Dec. 17, 2003) (hereinafter <u>Welland I</u>). A plan administrator's decision to deny benefits will be reviewed "on the basis of information that was available to the decision-maker when the decision was made." <u>Id.</u>

## Analysis

The Plan's plain language and binding precedent compel the Court to review Matrix's decision under an arbitrary and capricious standard of review and limit discovery to the administrative record.

First, the Plan's terms unambiguously confer discretionary authority to Matrix and its agents to make all disability determinations. These terms include:

- "All determinations of Total Disability are made by the Medical Board in its sole discretion."
- "The Medical Board has the authority to make all determinations of Total Disability on account of which claims are made by Participants for LTD Benefits under the Plan[.]"

- "Benefits under this Plan will be paid only if the Medical Board, Executive Director, or the Committee on Plan Administration, as applicable, decides in its discretion that the claimant is entitled to them under the terms of the Plan. In exercising its discretionary powers under the Plan, the Medical Board, Executive Director or the Committee on Plan Administration will have the broadest discretion permissible under applicable laws and its decision will be final and binding upon all persons affected thereby."

See Def. Answer, ex. A, sections 2.41, 8.3, 9.1(d).

New York law is clear: "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Greenfield v. Philles Recs., Inc., 98 N.Y.2d 562, 569 (2002). Here, the Plan's terms plainly and explicitly vest Matrix with discretionary authority to administer, interpret, and determine benefit eligibility.

When a non-ERISA plan vests discretionary authority in an administrator to make benefits determinations, as the Plan does here, those determinations may only be set aside if they were made arbitrarily or capriciously. See Welland I, 2003 WL 22973574, at *11. The Second Circuit affirmed this standard of review, which it explained was especially appropriate because the governing plan in Welland I conferred "full authority" to an administrator to interpret the plan's terms. See Welland v. Citigroup Inc., 116 F. App'x 321, 322 (2d Cir. 2004)(hereinafter Welland II). The sound reasoning of Welland I and Welland II

- 4 -

compels the same result here. This Court is tasked with reviewing Taylor's rights under the Plan, which is essentially a contract between Taylor and defendants. The Court cannot ignore the contract's terms or apply a more deferential standard of review than the parties bargained for when entering the contract. Because the Plan unambiguously confers discretionary authority to Matrix to render benefits determinations, this Court will only set aside those determinations if they were made in bad faith, arbitrarily, or fraudulently.

Moreover, courts applying New York law to the same Plan at issue in this litigation have also utilized an arbitrary and capricious standard of review. See O'Kelly v. Fed. Rsrv. Bank of Cleveland, 2023 WL 4045223, at *3 (6th Cir. June 16, 2023) ("When a plan vests sole authority in the designated decisionmaker, an employer's decision to deny non-ERISA benefits may be set aside only where it is made in bad faith, was arbitrary or was the result of fraud."); Martin v. Fed. Rsrv. Bank of Cleveland, 2025 WL 1898987, at *5 (N.D. Ohio July 9, 2025) (same). Although these cases are not binding on this Court, the fact that they involved the same Federal Reserve long term disability benefits plan and applied the same New York legal principles is persuasive. The weight of caselaw – both binding and persuasive – favors applying an arbitrary and capricious standard of review.

- 5 -

To determine whether Matrix's determination was made arbitrarily or capriciously, the Court must review the information Matrix relied on when it determined Taylor was not totally disabled. This information is in the administrative record. Any information extraneous to the administrative record – such as medical files not submitted with Taylor's appeal – could not have influenced Matrix's decision and therefore would not be relevant to whether that decision was made arbitrarily or capriciously. It would be inappropriate for this Court to judge Matrix's determination based on information not available to Matrix at the time it rendered the determination. See Welland I, 2003 WL 22973574, at *11 ("The Committee's decision is reviewed on the basis of information that was available to the decision-maker when the decision was made.").

Taylor argues the arbitrary and capricious standard of review impermissibly grafts ERISA deference onto a Plan that Congress explicitly exempted from ERISA. She asserts the Welland courts improperly treated a stipulation to use a deferential standard of review as a settled point of law. However, her assertion ignores the decades of state and federal caselaw cited in Welland I and Welland II that limit the scope of judicial review over non-ERISA benefits plans. See Gehrhardt v. Gen. Motors Corp., 581 F.2d 7, 11 (2d Cir.1978); Gitelson v. Du Pont, 17 N.Y.2d 46, 48-50 (1966); Pasternack v. Diamond, 161 N.Y.S.2d

277, 278 (1957), aff'd, 5 N.Y.2d 770 (1958). This Court may not ignore binding precedent simply because Taylor disagrees with it.

Finally, Taylor claims she is entitled to factual discovery because Matrix is a conflicted decision maker that "may have contractual, reputational, or structural incentives to minimize approvals in order to retain business[.]" P. Br. at 12 (Dkt. No. 34). Taylor correctly notes that district courts retain discretion to admit evidence outside of an administrative record for good cause. See Locher v. Unum Life Ins. Co. of Am., 389 F.3d 288, 294 (2d Cir. 2004). However, the Second Circuit has cautioned that "a conflicted administrator does not per se constitute good cause," and "a finding of a conflicted administrator alone should not be translated necessarily into a finding of good cause." Id. at 296.

To demonstrate good cause, Taylor must provide "case-specific allegations," such as procedural defects in the claim evaluation process. S.M. v. Oxford Health Plans (NY), Inc., 2014 WL 1303444, at *4 (S.D.N.Y. Apr. 1, 20114). Taylor's assertion that Matrix may be conflicted by various "incentives" falls short of the specificity needed to demonstrate good cause. Her Complaint does not allege any procedural defects in how the Plan handled her claim, such as bias on the Medical Board, lack of written procedures, or inadequate appellate review. Taylor's

speculation about Matrix's possible conflicts, standing alone, does not constitute good cause to justify discovery outside of the administrative record.

## Conclusion

Defendants' motion to limit discovery in this case to the administrative record is granted. Taylor is not foreclosed from moving for a good cause exception to admit evidence outside of the administrative record, providing she supports her motion with case-specific allegations.

So ordered.

Dated: New York, New York

December 16, 2025

LOUIS L. STANTON

U.S.D.J

- 8 -